IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Vanessa Hughes, | ) | C/A No. 3:19-cv-01703-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| Charter Communications, Inc., | ) | |
| d/b/a Spectrum | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Through this action, Plaintiff Vanessa Hughes ("Plaintiff") alleges sexual harassment and
retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"),
42 U.S.C. § 2000e, *et seq*., and retaliation in violation of the Family and Medical Leave Act
("FMLA"), 29 U.S.C. § 2601, *et seq*., against Defendant Charter Communications, Inc. d/b/a
Spectrum ("Defendant"). This matter is before the court on Defendant's motion to dismiss and
compel arbitration or, in the alternative, to stay proceedings pending arbitration (the "motion").
[ECF No. 13.] For the reasons outlined herein, the court is compelling the case to arbitration and
dismissing the matter.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a former employee of Defendant who claims she was subjected to sexual harassment
and retaliation in violation of Title VII and the FMLA. According to the allegations in the
Amended Complaint, Plaintiff began working for Spectrum in its customer service department in
December 2011 and, from 2013 until her resignation in June 2018, served as a retention
representative. [ECF No. 10.] She alleges that she was subjected to unwanted and harassing
conduct by the retention supervisor, beginning in January 2018. Plaintiff claims that once she

reported the inappropriate conduct, she received disparate treatment by her supervisors and co-workers. Plaintiff resigned in June 2018 and filed this lawsuit.

On June 13, 2019, Defendant removed the action to this court pursuant to 28 U.S.C. §§ 1331, 1332. [ECF No. 1.] On July 2, 2019,[1] Defendant filed the motion that is the subject of this Order. Defendant asks the court to compel arbitration under Section 4 of the Federal Arbitration Act ("FAA") and dismiss or, in the alternative, stay the proceedings. Defendant argues that a valid and enforceable agreement to arbitrate exists between the parties and that the dispute falls within the scope of the agreement. [ECF No. 13.]

### 1. Implementation of the Arbitration Agreement.

Defendant implemented its employee arbitration agreement through a program called Solution Channel. [ECF No. 13-1.] On October 6, 2017, the program was announced to employees via email from Paul Marchand, Executive Vice President, Human Resources, sent to the employees' company email accounts. [ECF No. 13-2, Aff. of Tammie Knapper, at ¶¶ 5–7.][2] The email's subject line was "Charter's Code of Conduct and Employee Handbook." *Id.* at Ex. A. The text of the email included a discussion of a "refresh" to the employee handbook, as well as the implementation of a new dispute resolution process—arbitration. With respect to arbitration, it stated that "[b]y participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation . . . involving a covered claim and/or the right to a jury trial

---

[1] Defendant initially filed a motion to dismiss and compel arbitration or, in the alternative, to stay proceedings pending arbitration on June 20, 2019. [ECF No. 8.] Shortly thereafter on June 27, 2019, Plaintiff filed an Amended Complaint, properly identifying the Defendant in the caption in accordance with Defendant's Local Rule 26.01 Answers. [ECF Nos. 10, 3.] Defendant accepted service of the Amended Complaint and filed the motion that is the subject of this Order. [ECF Nos. 11, 13.]
[2] Tammie Knapper is the Director of HR Technology for Defendant. [ECF No. 13-2, Aff. of Tammie Knapper, at ¶ 1.]

involving any such claim" and that "[u]nless you opt out of participating in *Solution Channel* within 30 days, you will be enrolled." *Id.* at ¶¶ 7–8; Ex. A. The email further informed employees that "[i]nstructions for opting out of *Solution Channel* are also located on Panorama."[3] *Id.* at ¶ 8; Ex. A.[4] The email also included a link to the Solution Channel webpage, which was likewise accessible to employees via Panorama. *Id.* at ¶¶ 9–10. The Solution Channel webpage included a link to a copy of the arbitration agreement. *Id.* at ¶ 10. Panorama also included the opt out information. *Id.* at ¶ 11; *see also* Ex. A ("More detailed information about *Solution Channel* is on Panorama. Unless you opt out of participating in *Solution Channel* within the next 30 days, you will be enrolled.").

To opt out of the program, employees would select a box next to the phrase "I want to opt out of Solution Channel" and then enter their name in the text field. *Id.* at ¶ 14; *see also* Ex. D. Employees who did not opt out of the program by November 5, 2017, were enrolled. *Id.* at ¶ 16. According to the Affidavit of Tammie Knapper, Plaintiff was on the list of email recipients for the October 6, 2017 email announcement, Plaintiff was employed on October 6, 2017, and Plaintiff did not opt out of the program by November 5, 2017. *Id.* at ¶¶ 20–21. According to Defendant, because Plaintiff failed to timely opt out of the program, she is bound by the arbitration agreement.

## 2. Scope of the Arbitration Agreement.

The arbitration agreement provides that the parties "mutually agree that, as a condition of . . . employment with [Defendant], any dispute arising out of or relating to . . . employment with [Defendant] or the termination of that relationship, . . . must be resolved through binding arbitration." *Id.* at Ex. C, ¶ A. The arbitration agreement further provides that it covers:

---

[3] Panorama is Defendant's intranet site and is accessible to its employees. *Id.* at ¶ 9.
[4] Attached to the Tammie Knapper Affidavit is a copy of the email sent to Defendant's employees. *Id.* at ¶ 7; Ex. A. Plaintiff does not dispute the authenticity of the email.

> all disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which [Plaintiff] or [Defendant] have an alleged cause of action related to pre-employment, employment, employment termination or postemployment-related claims, whether the claims are denominated as . . . unlawful discrimination or harassment (including such claims based upon . . . sex, . . . and any other prohibited grounds), [or] claims for unlawful retaliation, [or] claims arising under the Family Medical Leave Act[.]

*Id.* at ¶ B. Defendant further argues that Plaintiff's claims fall within the scope of the agreement.

### 3. Arguments of Plaintiff.

Here, Plaintiff does not dispute the fact that her claims fall within the scope of the arbitration agreement. The sole issue is whether the parties made an agreement to arbitrate. Plaintiff argues that the arbitration agreement is not "valid under state contract law due to lack of actual notice and lack of mutual assent." [ECF No. 16 at p.8.] As to "lack of actual notice," Plaintiff argues that the company-wide email is insufficient to establish that she was on notice of the agreement given her affidavit testimony that she does not "remember receiving or reviewing that email during [her] employment with [Defendant]." [ECF No. 16-2, Aff. of Vanessa Hughes, at ¶¶ 8–9.] Plaintiff also claims there is no "mutual assent" or "meeting of the minds" regarding arbitration. Plaintiff argues that without evidence that she received, opened, and read the arbitration agreement, the opt-out provision is unenforceable. [ECF No. 16 at pp.10–11.]

### 4. Report and Objections.

On October 24, 2019, United States Magistrate Judge Shiva V. Hodges entered a Report and Recommendation ("Report") on the motion in accordance with 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.). The Report applied the two-part test to determine whether the dispute is arbitrable. [ECF No. 18.] Specifically, the Report inquired as to (1) whether a valid agreement to arbitrate existed between the parties; and (2) whether the specific dispute fell within

the scope of the agreement. *Id.* (referencing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937–38 (4th Cir. 1999)). The Report looked to South Carolina law to determine whether Plaintiff had sufficient notice to establish a meeting of the minds under South Carolina law and whether Plaintiff's failure to opt out of the arbitration agreement indicated her acceptance of the terms.

The Report found that an email is deemed received when it enters the recipient's email system in a readable format. *Id.* at pp.5–6 (citing S.C. Code Ann. § 26-6-150). Further, just as evidence of mailing constitutes a rebuttable presumption of receipt, the Report concluded that the undisputed evidence that the email was sent from an employer to the employee's company email address also would create a rebuttable presumption of receipt. *Id.* at p.6. The Report further found that Plaintiff's affidavit, stating that she did not remember receiving the email, was insufficient to rebut the presumption. *Id.* at pp.6–7. And, because Plaintiff continued her employment with Defendant after receipt of the email and failing to opt out, the Report found that she assented to the terms of the arbitration agreement.

For the reasons outlined above, the Report recommends that the court grant the motion and retain jurisdiction over the parties for all matters relating to the action after arbitration. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed objections to the Report on November 7, 2019 [ECF No. 21], and Defendant filed a response on November 21, 2019 [ECF No. 23]. The matter is now ripe for resolution.

**STANDARD**

**1. Review of a Magistrate Judge's Report.**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight and the responsibility to make a final determination remains with this court.

*Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## 2. Standard Applicable to Motions to Compel Arbitration.

Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Courts will compel arbitration under Section 4 if: (1) the parties entered into a valid agreement to arbitrate claims; and (2) the dispute or claims in question fall within the scope of the arbitration agreement." *Oyekan v. Education Corp. of Am.*, No. 4:18-cv-1785, 2019 WL 978865, at *2 (D.S.C. Feb. 28, 2019).

"Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997). Section 4 requires the district court to "decide whether the parties have formed an agreement to arbitrate." *Berkley Cnty. School Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234& n.9 (2019). The question of whether an arbitration agreement has been formed is one of contract law, and ordinary state law principles apply. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Where a party "unequivocally denies 'that an arbitration agreement exists,' that party bears the burden of coming forward with "sufficient facts" to support her position. *Berkley County School District*, 944 F.3d at 234. The standard to decide whether the party has presented "sufficient facts" is "akin

to the burden on summary judgment," and the court may consider matters outside the pleadings.

*Chorley Enterps., Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 564 (4th Cir. 2015).

The trial provision of Section 4 is invoked only where "the record reveals a genuine dispute of material fact 'regarding the existence of an agreement to arbitrate.'" *Berkley County School District*, 944 F.3d at 234. Where there is no genuine dispute of material fact regarding the existence of the agreement, the court will compel arbitration.

## OBJECTIONS AND RESPONSE

Plaintiff raises three specific objections[5] to the Report's recommendation to compel arbitration.

The three objections may be summarized as follows:

1. The Report erroneously relies on *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442 (4th Cir. 2007) in support of the conclusion that evidence of an employer sending an email creates a rebuttable presumption of receipt by the employee. [ECF No. 21 at pp.5–6.]

2. The Report overlooks case law that is "factually and legally in line with Plaintiff's case." *Id.* at p.6. According to Plaintiff, application of the *Lampo v. Amedisys Holding, LLC et al.* (2018-CP-22-01001)'s analysis[6] to this case would warrant denial of Defendant's motion. Further, Plaintiff argues that the facts of this case are more in line with the facts of *Mazone v. Dolgencorp, LLC* (3:17-cv-1088-JFA), in which the court ordered a jury trial on actual notice.

3. The request for a jury trial on actual notice as not addressed in the Report. [ECF No. 21 at pp.8–9.]

---

[5] To the extent the Plaintiff seeks to incorporate all arguments from her response in opposition to the motion, the arguments are construed as general objections and do not warrant de novo review. [ECF No. 21 at pp. 7, 9.] *See, e.g., Solt v. Boeing Co.*, No. 2:16-3862, 2018 WL 1583977, at *3 (D.S.C. Apr. 2, 2018) (construing arguments as general objections where plaintiff "simply repeated, in a conclusory manner, arguments that the Magistrate Judge has already considered in full"); *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 412 (D.S.C. 2014) ("[A] large majority of Plaintiff's objections merely restate, in many instances, verbatim, the numerous arguments he advanced in his memos related to the cross motions for summary judgment. . . . Therefore, those objections are not sufficient to require a *de novo* review of the Report by this Court."). "Because general objections do not direct the court's attention to any specific portions of the report, general objections to the magistrate judge's report are tantamount to a failure to object." *Sumter v. Jenny Craig, Inc.*, No. 3:14-cv-4460, 2016 WL 3397588, at *2 (D.S.C. June 21, 2016). As to the "incorporated" arguments, the court has reviewed the Report and finds no clear error.
[6] *Lampo* is pending in the Court of Common Pleas for Georgetown County, South Carolina.

In response, Defendant argues that the Report is properly supported by the evidence in the record and by established authority. [ECF No. 23 at p.2.]  Further Defendant attaches an affidavit of Daniel Vasey, Senior Director of Records Management and eDiscovery,[7] in which Mr. Vasey confirms that, based on a review of Defendant's records, Plaintiff opened the announcement email. [ECF No. 23-1 at ¶ 4.]  Finally, Defendant notes that the request for a jury trial is improper where, as here, the agreement provides that all disputes regarding the arbitrability of a claim must be submitted to arbitration. [ECF No. 23 at pp.6–7.]

## DISCUSSION

As outlined herein, the court reviewed the record, applicable law, and Plaintiff's objections, and it finds that the matter should be compelled to arbitration.

### 1. Sufficiency of Notice and Report's Reliance on *Bosiger*.

 "Arbitration is a matter of contract and controlled by contract law." *Smith v. D.R. Horton, Inc.*, 742 S.E.2d 37, 40 (S.C. 2013) (citation omitted); *see also Hooters of Am., Inc. v. Phillips*, 39 F. Supp. 2d 582, 610 (D.S.C. 1998), *aff'd and remanded*, 173 F.3d 933, 941 (4th Cir. 1999). To resolve disputes regarding the formation of an arbitration agreement, the court looks to ordinary state-law principles. *American Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005). In this case, there is no dispute that because South Carolina is the situs of events, South Carolina

---

[7] Defendant states that Mr. Vasey's testimony was not included with its motion because its "counsel only recently discovered the existence of this information." [ECF No. 23 at p.3, n.2.] This court may "receive further evidence" during its review of the Report and objections. 28 U.S.C. § 636.  While Mr. Vasey's testimony provides further evidence of Plaintiff's "receipt" of the email at issue, the additional evidence is not necessary to support the court's conclusion that the evidence previously presented resulted in a presumption of receipt that was not rebutted by Plaintiff's affidavit.  The court notes, however, that this additional evidence further supports the "actual notice" issue outlined in Section 1(B), *infra*.

law applies. *Galloway v. Santander Consumer USA, Inc*., 819 F.3d 79, 85 (4th Cir. 2016) (applying law of state agreed upon by parties in deciding arbitration issues).

In South Carolina, "a contract is formed between two parties when there is, inter alia, 'a mutual manifestation of assent to [its] terms.'" *Berkeley County School District*, 944 F.3d at 236 (citing *Edens v. Laurel Hill, Inc*., 247 S.E.2d 434, 436 (S.C. 1978)). "Such mutual manifestation 'ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party.'" *Id.* (citing Restatement (Second) of Contracts § 22 (Am. Law Inst. 1981)). Acceptance can be a return promise or performance. *See Sauner v. Public Serv. Auth. of S.C.*, 581 S.E.2d 161, 165–66 (S.C. 2003). In this case, Plaintiff's position is that the "unsigned[8] agreement is not valid under state contract law due to lack of actual notice and lack of mutual assent." [ECF No. 16 at p.8.]

In the motion, Defendant argued, and submitted evidence in support of, a valid and enforceable arbitration agreement between the parties. When Plaintiff responded, arguing that an arbitration agreement did not exist[9] and a trial under Section 4's trial provision was required, the burden shifted to Plaintiff to put forth "sufficient facts" in support of her position. *Berkeley County School*

---

[8] The FAA requires an agreement in writing for arbitration to proceed, but "the overwhelming weight of authority supports the view that a signature is not required to meet the FAA's written requirement." *Goldberg v. C.B. Richard Ellis, Inc*., No. 4:11-cv-02237, 2011 WL 6817908, at *2 (D.S.C. Dec. 28, 2011); *see also Willard v. Dollar General Corp*., No. 3:17-cv-00675, 2017 WL 4551500, at n.3 (D.S.C. Oct. 12, 2017); *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) ("While a contract cannot bind parties to arbitrate disputes they have not agreed to arbitrate; it does not follow that under the Federal Arbitration Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision.") (internal quotes and alterations omitted).

[9] Plaintiff's affidavit testimony that she "do[es] not remember receiving or reviewing that email during [her] employment," [ECF No. 16-2 at ¶ 9], does not equate to an *unequivocal* denial that an arbitration agreement exists. *See Berkeley County School District*, 944 F.3d at 234 (stating a court is required to conduct a trial under the trial provision of Section 4 when (1) a party unequivocally denies the arbitration agreement exists <u>and</u> (2) puts forth sufficient facts in support of the denial).

*District*, 944 F.3d at 234. Unless Plaintiff's evidence set forth "a genuine dispute of material fact 'regarding the existence of an agreement to arbitrate,'" the case was properly compelled to arbitration. *Id.* (citing *Chorley*, 807 F.3d at 564). Plaintiff's objection surrounds the Report's reliance on a presumption that arises when a document is mailed or, in this case, emailed. The court finds that the presumption was properly applied.

### A. Presumption of Receipt.

It is well established that evidence of mailing a properly addressed letter gives rise to a presumption of receipt under South Carolina law. *Weir v. CitiCorp Nat'l Servs., Inc.*, 435 S.E.2d 864, 868 (S.C. 1993); *Hagner v. United States*, 285 U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was *actually received* by the person to whom it was addressed.") (emphasis added). To overcome the presumption, the opposing party must submit evidence that the mailing was not actually accomplished or testimony affirmatively denying receipt. *See, e.g., Foster v. Ford Motor Credit Co.*, 395 S.E.2d 440 (S.C. 1990) (affirmative denial of receipt created an issue of material fact); *Burbage v. Jefferson Standard Life Ins. Co.*, 136 S.E. 230, 231 (S.C. 1926) (testimony affirmatively denying that check and note were received gave rise to a question for the jury).

By statute, an email is considered received in South Carolina when it enters the recipient's email system in a readable format. S.C. Code Ann. § 26-6-150(B)(2). The Report concludes that "South Carolina courts would find that evidence of an email from an employer to its employee's company email address also creates a rebuttable presumption of receipt."[10] [ECF No. 18 at p.6.]

_____

[10] This court notes that several other courts have extended the presumption to emails. *Ball v. Kotter*, 723 F.3d 813, 830 (7th Cir. 2013); *American Boat Co. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005); *Dixon v. Synchrony Fin.*, No. 1:15-cv-00406, 2015 WL 12720290, at *5

Much like mail was in 1932, see *Hagner*, 285 U.S. at 430, email is a universal feature of modern life.[11] While South Carolina courts have not specifically address whether a presumption of receipt arises when an email is sent, it has considered the use of email when answering the question of what constitutes "receipt" of "notice" under the South Carolina Appellate Court Rules. *Wells Fargo Bank, N.A. v. Fallon Props. S.C., LLC*, 810 S.E.2d 856 (S.C. 2018). In that case, the South Carolina Supreme Court was presented with the "novel issue of whether an email that provides written notice of entry of an order . . . triggers the time for serving a notice of appeal[.]" *Id.* at 857. It answered in the affirmative. While that case involved notice of entry of an order, as opposed to notice of an arbitration agreement, the case is instructive in assessing the objections

_____

(N.D. Ga. Aug. 18, 2015) (extending rebuttable presumption to email in case involving an opt-out arbitration provision and finding an affidavit stating the party does "not recall ever receiving that email" insufficient to overcome the presumption of receipt); *see also Johnson v. Harvest Mgmt. Sub TRS Corp.--Holiday Retirement*, No. 3:15-cv-00026, 2015 WL 5692567, at *3 (S.D. Ind. Sept. 25, 2015) ("The court sees no principled reason why the presumption should not apply to e-mail, and Plaintiff offers no argument against this application."); *Abdullah v. American Exp. Co.*, No. 3:12-cv-1037, 2012 WL 6867675, at *5 (M.D. Fla. Dec. 19, 2012) (extending rebuttal presumption to email in case involving an arbitration provision and finding that an "affidavit stating he did not receive the email" was insufficient to create a genuine issue of fact as to whether an agreement was reached), *report and recommendation adopted*, 2013 WL 173225 (M.D. Fla. Jan. 16, 2013).

[11] Courts around the country have recognized the pervasive role of email in the modern era in a variety of contexts. *See, e.g., United States v. Hamilton*, 701 F.3d 404, 408–09 (4th Cir. 2012) (recognizing an "era in which email plays a ubiquitous role in daily communications" and finding district judge did not abuse its discretion in finding waiver of marital privilege when emails were sent through a work email); *Copano Energy, LLC v. Bujnoch*, No. 18-0044, 2020 WL 499765, at *5 (Tex. Jan. 31, 2020) (Email "is used by nearly everyone for nearly every type of communication, from the flippantly inconsequential to the bindingly formal."); *Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 332 (Minn. 2016) (considering minimum contacts and finding "with ubiquitous e-commerce and electronic communication, it would be arbitrary to exclude emails from consideration in a minimum contacts analysis"); *Hall v. Sargeant*, No. 9:18-cv-80748, 2019 WL 1359485, at *1 (S.D. Fla. Mar. 26, 2019) (considering question of whether email account is a "place" for purposes of Florida's tort of invasion of privacy by intrusion; "In 1971, MIT trained electrical engineer Ray Tomlinson sent the world's first email. Just under a half century later, emails are ubiquitous" (internal citations omitted)); *Murphey v. Mid-Century Ins. Co.*, No. 13-2598, 2014 WL 2619073, at *4 (D. Kan. June 12, 2014) ("Certainly, contract negotiations by e-mail have become ubiquitous.").

before this court—where both "receipt" and "notice" are at issue. The decision implies that for purposes of "receipt" of "notice," the South Carolina Supreme Court considers email and mail as equals.[12] *See id.* ("All that is required to trigger the time to appeal is that the parties *receive* such notice."). Between the ubiquitous nature of email in today's workplace and everyday culture, the South Carolina statute, and the recognition by the South Carolina Supreme Court that email can constitute "notice," this court has no hesitation in concluding that the presumption applies.

At issue in Plaintiff's objection is the question whether Plaintiff's affidavit, stating she "does not recall" receiving the employee-wide email, rebuts the presumption of receipt. Plaintiff objects to the Report's reliance on *Bosiger v. U.S. Airways*, 510 F.3d 442 (4th Cir. 2007) in reaching its conclusion that Plaintiff did not rebut the presumption.

Plaintiff argues that "the court in *Bosiger* was concerned with the notice required in a bankruptcy context, which is not at issue here." [ECF No. 21 at p.5.] While *Bosiger* involved notice in a bankruptcy proceeding, it did not apply principles exclusive to bankruptcy cases. The *Bosiger* court looked to general principles regarding receipt and notice, including the presumption that arises from mailing. Because the documents at issue in that case were mailed, the court found it had to "presume, absent strong evidence to the contrary, that [the party] received the letters of notice." *Bosiger*, 510 F.3d at 452 (citing *FDIC v. Schaffer*, 731 F.2d 1134, 1137 (4th Cir. 1984)).

_____

[12] The South Carolina Supreme Court drew a distinction between the requirements in Rule 203(b)(1) of the South Carolina Appellate Court Rules ("SCACR") and Rule 5 of the South Carolina Rules of Civil Procedure ("SCRCP"). Rule 203(b)(1), SCACR requires a notice of appeal to be served within thirty days of *receipt of written notice of entry* of an order. In contrast, Rule 5, SCRCP, requires written notices to be "*served* by mail or hand delivery." (emphasis added). Because Rule 203(b)(1), SCACR does not require service of the notice, the South Carolina Supreme Court found email notice was sufficient to trigger the time for serving the notice of appeal.

In *Farrow Road Dental Group, P.A. v. AT&T Corp.*, this court applied the same presumption in ruling on a similar notice argument in the context of arbitration. No. 3:17-cv-01615, 2017 WL 4216158, at *3 (D.S.C. Sept. 22, 2017). There, the plaintiff argued that it "did not consent to arbitration because there was no evidence [the defendant] had even provided [the agreement] to [the plaintiff]." *Id.* The court disagreed, finding that the defendant produced evidence of mailing the agreement and the "[e]vidence of mailing establishes a rebuttable presumption of receipt." *Id.* (citing *Bakala v. Bakala*, 576 S.E.2d 156, 163 (S.C. 2003)). The court went on to find that where the responding party fails to rebut the presumption and continues to operate under the contract, there is acceptance of the offered terms, including arbitration. *See id.* (compelling arbitration in an opt-out context after finding acceptance of arbitration by continued use of services under the contract). Accordingly, this court sees no difference between the presumption applied in *Bosiger* and the presumption applied in *Farrow Road*.

Plaintiff also argues that there was more evidence in *Bosiger* to indicate that the plaintiff in that case had "actual notice," thereby rendering the *Bosiger* court's analysis inapplicable to this case. [ECF No. 21 at p.5 (arguing "[u]nlike *Bosiger*, there is not substantial evidence in this case to indicate that Plaintiff received adequate notice").] Plaintiff's argument conflates two separate points: (1) the evidence required to give rise to the presumption of receipt versus (2) the evidence required to rebut the presumption. Once the party claiming notice submits sufficient evidence to give rise to the presumption of receipt, the burden shifts to the party claiming lack of receipt to present evidence to rebut the presumption. The issue in *Bosiger*, much like the issue here, is whether the plaintiff's evidence "effectively rebut[s] this evidence [of receipt of notice]." *Bosiger*,

510 F.3d at 452. There, the evidence submitted to rebut the presumption was a "general denial."[13] *Id*. And, just as here, the court looked to the party's "general denial" and found it "does not constitute the strong evidence needed to overcome the presumption of receipt." *Id.* In the *Bosiger* court's own words, it had to "begin" with the presumption that "Bosiger received the letters of notice mailed to him." *Id.* Having started with the evidence of mailing, which gives rise to the presumption, the *Bosiger* court then turned to the sufficiency of the rebuttal evidence. The rebuttal evidence, *i.e.*, "Bosiger's general denial," did "not constitute the strong evidence needed to overcome the presumption of receipt." *Id.* The same analysis applies here:

- Defendant presented evidence of sending email notice of the arbitration policy;

- The evidence gave rise to a presumption of receipt;

- The burden shifted to Plaintiff to present evidence to rebut the presumption; and

- The question became whether the testimony that Plaintiff does "not remember receiving or reviewing that email during my employment" [ECF No. 16-2, Aff. of Vanessa Hughes, at ¶ 9] constituted an affirmative denial of receipt sufficient to rebut the presumption.

As noted above, South Carolina law requires testimony affirmatively denying receipt to rebut the presumption and create an issue of fact. The court finds that Plaintiff did not present "'sufficient facts' [to] support [her] denial of an agreement to arbitrate." *Berkeley County School District*, 944 F.3d at 234.

### B. Actual notice.

The court will also address the "actual notice" language from the employment cases[14] cited in Plaintiff's objections. [ECF No. 21 at p.6.] According to Plaintiff, even if the presumption applies,

---

[13] The plaintiff in *Bosiger* relied on his own deposition testimony that "he cannot 'recall receiving any notice of the second bankruptcy.'" 510 F.3d at 452. The *Bosiger* court deemed this testimony a "general denial."

[14] *Chassereau v. Gobal-Sun Pools, Inc*., 611 S.E.2d 305 (S.C. Ct. App. 2005) addressed the question of arbitrability of claims, not the validity of an arbitration agreement. The parties in this

the email in this case is "insufficient to overcome the high bar of *actual notice* required by South Carolina law." *Id.* (emphasis added). The court disagrees.

The concept of "actual notice" stems from *Fleming v. Borden*, 450 S.E.2d 589 (S.C. 1994). *Fleming* involved the question of "whether an employer may modify *a contract created by an employee handbook* with a subsequent employee handbook." *Id.* at 594 (emphasis added). The South Carolina Supreme Court held that it could unilaterally modify an implied employment contract, but the employer was required to give the employee "actual notice" of the modification. *Id.* at 595–96. This specific issue most often arises in those instances where an employer is changing an implied employment contract to employment at-will through a disclaimer in a subsequently issued employee handbook. *See id.*; *see also Shelton v. Oscar Mayer Foods Corp.*, 459 S.E.2d 851, 857 (S.C. Ct. App. 1995) (applying "actual notice" requirement where subsequent employee handbook changed employment status to "at will").

In this case, Plaintiff is not arguing that Defendant's employee handbook or other policies created an implied contract of employment that Defendant then sought to unliterally modify through a subsequent employee handbook. Rather, it is apparent from the record that the arbitration agreement is a "standalone, independent agreement" that is "distinct from the handbook policies." *Oyekan*, 2019 WL 978865, at *3; [ECF No. 13-2, Aff. of Tammie Knapper, at Ex. A (providing link to "Employee Handbook" and "Code of Conduct" in third paragraph; discussion of new dispute resolution policy and link to "Solution Channel" in paragraphs four and five)]; *see also Cox v. Assisted Living Concepts, Inc.*, No. 6:13-00747, 2014 WL 1094394, at *12 (D.S.C.

---

case agree that the claims fall within the scope of the arbitration agreement and, therefore, arbitrability of claims is not in issue. This court is conducting only a "limited review to ensure that a valid agreement to arbitrate exists between the party." *Oyekan*, 2019 WL 978865, at *3. The question of whether "the specific dispute falls within the scope of the agreement to arbitrate" is not before the court. *Id.* Therefore, *Chassereau* is inapplicable.

Mar. 18, 2014) (adopting report and recommendation, which noted that "defendant in this case does not contend that it has an employment contract with the plaintiff; rather, it contends that it has an arbitration contract with her"). Thus, the *Fleming* "actual notice" standard is not directly applicable to the facts before this court.

Yet, in a similar scenario, the Honorable Henry M. Herlong, Jr. considered the "actual notice" requirement in determining whether an employee had notice of an arbitration agreement. *Reese v. Commercial Credit Corp.*, 955 F. Supp. 567 (D.S.C. 1997). There, much like here, the plaintiff was "not arguing that [defendant's] employee handbook or other policies created an implied contract." *Id.* at 570. While the case did not present the *Fleming* question,[15] the court "believ[ed] that the South Carolina Supreme Court would apply the same actual notice requirement to an employer's implementation of an arbitration agreement" and applied the requirement to the facts before it. *Id.* Applying the "actual notice" requirement, the court found that the record indicated that the plaintiff "*did receive actual notice* of the Arbitration Policy" when the defendant "*mailed the Arbitration Policy to [plaintiff] with a letter that carefully explained the new policy.*" *Id.* (emphasis added). The court was further persuaded by the arbitration policy stating that it made arbitration the exclusive form of resolution of employment disputes. *Id.*

South Carolina courts have not ruled on whether the "actual notice" requirement from the implied employment contract context extends to an independent arbitration agreement, *i.e.*, one existing separate and apart from an employee handbook. However, even if this court considers "actual notice," the facts before this court, much like the facts in *Reese*, support a finding of actual notice.

---

[15] The court recognized that *Fleming* was not applicable and further noted that there was no question for the jury because the arbitration agreement was distributed directly to employees with an "explanatory letter notifying the employees of the new policy." *Reese*, 955 F. Supp. at n.2.

In finding "actual notice," the *Reese* court was persuaded by the fact that the policy was "mailed . . . with a letter that carefully explained the new policy." *Reese*, 955 F. Supp. at 570. In this case, notice of implementation of the new dispute resolution program that included "binding arbitration" was sent to Plaintiff by email. The email "carefully explain[s] the new policy." More specifically, it explains that:

- "workplace conflicts arise from time to time";

- the "vast majority of these will be appropriately resolved through informal channels (such as speaking directly to your supervisor, manager or local human resources representative)";

- some disputes "may be better addressed through a more structured and formal resolution process";

- the company is launching "*Solution Channel*, a program that allows you and the company to efficiently resolve covered employment-related legal disputes through binding arbitration";

- "[b]y participating in Solution Channel, you and Charter both waive the right to initiate or participate in court litigation (including, class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim";

- "[u]nless you opt out of participating in Solution Channel within the next 30 days, you will be enrolled"; and

- "[i]nstructions for opting out of Solution Channel are also located on Panorama."

[ECF No. 13-2.] The email included a link to the Solution Channel webpage, which included links to the arbitration agreement and the program guides under "Key Documents." [ECF No. 13-2, Ex. B.]

In addition to the explanation provided in the email, the Solution Channel page on Panorama provides an additional explanation of the dispute resolution program. *Id.* And there is no dispute that all three documents—email, Solution Channel page, and arbitration agreement—explicitly state that by agreeing to the program and to arbitration, the parties are waiving the right to participate in court litigation. [ECF No. 13-2, Ex. A (noting "employment-related legal disputes"

17

are resolved "through binding arbitration" and by participating the parties "waive the right to initiate or participate in court litigation"); Ex. B ("Participation in Solution Channel means that you and Charter agree to waive any right to participate in court litigation involving covered disputes and to arbitrate those disputes that are not successfully resolved following the Internal review process."); Ex. C (notice in all capital letters and bold font; notes employment-related disputes are subject to binding arbitration and the parties are waiving right to litigate dispute in court).] For the same reasons identified in *Reese*, this court finds that Plaintiff received "actual notice" of the dispute resolution program, including the arbitration agreement.

**2. Report's Lack of Discussion of *Lampo* and Limited Discussion of *Mazone*.**

Plaintiff's second objection claims the Report erred in overlooking "legally relevant caselaw," that is *Lampo* and *Mazone*. [ECF NO. 21 at p.6] According to Plaintiff, the *Lampo* case is "factually and legally in line with Plaintiff's case." *Id.* This court disagrees.

The *Lampo* decision, while short, evidences several distinct differences. First, the email in *Lampo* was only "two lines" with a link to a purported "Important Policy Change." [ECF No. 16-1 at p.1.] The email at issue in this case explains the new policy, including the option to opt-out within 30 days. Second, in *Lampo*, the link in the email opened a pop-up acknowledgement form that the employee had to "acknowledge" *before* accessing a copy of the arbitration agreement. *Id.* Here, employees were given access to the arbitration agreement and policy guidelines without having to click or sign an acknowledgment form—employees could read, analyze, take any action they desired within the 30-day period before deciding whether to opt-out. Third, to opt out of the agreement, the employees in *Lampo* had to print a separate form, complete it, and mail it to the company's corporate office. *Id.* at p.2. Defendant's opt-out form, by contrast, was available to

employees online in an electronic format. This case is neither "factually" nor "legally" in line with *Lampo*.

In addition to *Lampo*, Plaintiff also relies on *Mazone*. [ECF No. 21 at p.7.] In *Mazone*, the Magistrate Judge issued an oral report and recommendation, recommending a jury trial on the limited issue of whether there was sufficient notice to establish a meeting of the minds under state law. *Mazone v. Dolgencorp*, LLC, 3:17-cv-01088, ECF No. 21. The judge adopted the oral report and recommendation by text order. *Id.* at ECF No. 30. Without a written report, order, or transcript, this court cannot identify the exact reasons why the *Mazone* court ordered a jury trial on the issue of meeting of the minds, but, based on the limited information available to it, concludes the Magistrate Judge in this case did not err in distinguishing it from *Bosiger*.

The *Mazone* agreement was circulated to employees via the employee intranet, but it included *both* a line for e-signing to agree to the arbitration agreement *and* an option to complete a form to opt-out of the arbitration agreement. [ECF No.17-1.] For employees who failed to sign the agreement and failed to opt out with a specified time period, the employer then mailed a post card to remind the employees that they needed to sign the agreement or opt out. *Id.* This scenario of two options (opt in v. opt out) to an agreement is not before the court. The agreement presented to Plaintiff was an opt-out agreement. If Plaintiff did not opt out within the specified time, she was bound by the agreement's terms. The Report did not err in distinguishing *Mazone*.

### 3. Jury Trial on Issue of Arbitrability.

Plaintiff's final specific objection is that the "request for a jury trial on the issue of actual notice was not addressed in the Report[.]" [ECF No. 21 at p.8.] "[T]o obtain a jury trial, the parties must show genuine issues of material fact regarding the existence of an agreement to arbitrate." *Chorley*, 807 F.3d at 564; *see also Berkeley County School District*, 944 F.3d at 234 (A trial is

only necessary "when a party unequivocally denies 'that an arbitration agreement exists,' and 'show[s] sufficient facts in support' thereof"). This opinion thoroughly examines the issues and arguments of the parties and concludes that Plaintiff's evidence was insufficient to overcome the presumption of receipt and create a genuine dispute for trial. Because Plaintiff's evidence does not give rise to a "genuine issue[] of material fact regarding the existence of an agreement to arbitrate," *Chorley*, 807 F.3d at 564, a jury trial is not warranted.

**4. Dismissal v. Stay of Litigation.**

Having concluded that arbitration is proper, the court must consider whether to dismiss or stay the action. The Report recommends compelling arbitration, but also recommends that the "court retain jurisdiction over the parties for all matters relating to this action after arbitration, including enforcement of any arbitration judgment rendered." [ECF No. 18.]

There is "some tension" in the Fourth Circuit Court of Appeals over the discretion afforded a district court in dismissing rather than staying an action compelled to arbitration. *Aggarao v. Mol Ship Mgmt. Co., Ltd.*, 675 F.3d 355, n.18 (4th Cir. 2012). Section 3 of the FAA suggests that the proper course of action, upon motion by any party, is to stay the proceedings pending arbitration, rather than dismiss the case outright. 9 U.S.C. § 3. But the Fourth Circuit has concluded that dismissal is the proper remedy when *all* of the issues presented in a lawsuit are subject to arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *see also Greenville Hosp. Sys. v. Employee Welfare Ben. Plan for Emps. of Hazelhurst Mgmt. Co.*, 628 F. App'x 842, 845–46 (4th Cir. 2015) (affirming dismissal where district court determined all issues were arbitrable). In this case, it is

undisputed that all of Plaintiff's claims are subject to arbitration and, therefore, the court will dismiss the case.

**5. Attorneys' Fees and Costs.**

Finally, Defendant requests attorneys' fees and costs associated with the filing of the motion, arguing "plaintiff unreasonably and vexatiously filed this lawsuit" "[d]espite her knowledge and acceptance of the Arbitration Agreement." [ECF No. 13 at p.11.] The court notes that Defendant has not filed a separate motion for fees or otherwise set for the amount it is seeking to recover. *See Oyekan*, 2019 WL 978865, at *6 (denying request for attorneys' fees and costs). Further, the court is unable to identify any bad faith or unreasonable acts by Plaintiff in her pursuit of claims in this court. *See id.* Therefore, this court denies the request for attorneys' fees and costs.    !

**CONCLUSION**

The court thoroughly reviewed the record, including all pleadings and exhibits filed in this case, as well as the applicable law. For the reasons set forth above, this court adopts in part and rejects in part the Report [ECF No. 18]. It is the judgment of this court that Defendant's motion to compel arbitration [ECF No. 13] is **GRANTED** in part and **DENIED** in part. While the parties' claims are hereby **COMPELLED** to arbitration and the case is **DISMISSED**, the court **DENIES** Defendant's request for attorneys' fees and costs.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

March 2, 2020
Florence, South Carolina